**In re SELHEIMER & CO.**

Securities Investor Protection
Corporation, Plaintiff,

v.

Edward P. Murphy, III, Defendant,

Edward P. Murphy, III, Third–
Party Plaintiff,

v.

Perry Selheimer, Peter Cardamone, Ernest F. Grothe, Preston Heckler, and Edward Suarez, Third–Party Defendants.

Bankruptcy No. 02–0756.
Adversary No. 04–0669.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 20, 2005.

**OPINION**

STEPHEN RASLAVICH, Bankruptcy Judge.

*Introduction*

In this adversary proceeding, the Securities Investor Protection Corporation (SIPC) has filed suit against Edward P. Murphy, III, (Murphy) under § 723(a) of the Bankruptcy Code. SIPC now files this Motion for Partial Summary Judgment and Other Relief (the "Motion"). The motion seeks a finding that Murphy is liable to SIPC for over $250,000 in advances made on certain customer claims as well as future payments on unliquidated claims. It also requests a financial statement from Murphy pursuant to Bankruptcy Rule 1007(g). Murphy opposes the motion. For the reasons set forth below, the motion will be granted.

*Standard for Summary Judgment*

The instant motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.").[1] Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together

---

**1.** Fed.R.Civ.P. 56 is applicable to the instant proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P.")

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–250, 106 S.Ct. at 2511. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* at 249, 106 S.Ct. at 2510. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

*The Factual Record*

Debtor, which was formed as a partnership in 1967, was in the business of acting as a securities broker-dealer and providing other financial services until December 7, 1994, when it closed its business because of the presence at the firm of investigators from the Securities and Exchange Commission ("SEC"). Motion at ¶¶ 1–2, 5.[2] At all relevant times, Debtor was registered as a securities broker-dealer with the SEC and was a member of SIPC. *Id.* ¶ 3.

As a result of the SEC's investigation, Selheimer who, at all relevant times, was the managing general partner of the Debtor was charged with various criminal defalcations; he eventually pleaded guilty to

---

**2.** In his answer to the Motion, Murphy admitted the factual allegations. To the extent that it contains anything other than a complete admission, the answer adds to, or qualifies, what are collateral matters. *See* Answer of Defendant, Edward G. Murphy, III, to Motion of Securities Investor Protection Corporation as Trustee for Partial Summary Judgment and Other Relief ("Answer").

mail fraud. *Id.* ¶ 6. In connection with his guilty plea, Selheimer agreed that: (i) "the relevant conduct for the offense of conviction includes [his] sale of the securities and other funds provided to him by" Edwin Fugate, Best, Murphy, his sister, Deborah Stone, and their mother, Jeanne Murphy; and (ii) the offense involved an "abuse of trust." Exhibit G to Motion at ¶ 7(a) & (c). *See also* Motion ¶ 7; Answer ¶ 7.

On September 8, 1997, pursuant to the requirements of Section 78fff–4(b) of the Securities Investors Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, SIPC caused notices to be published and mailed of the commencement of a "direct payment procedure" with respect to the Debtor. Motion ¶ 8, Ex. A. On September 26, 1997, in accordance with 15 U.S.C. § 78fff–4, SIPC issued a determination in the "direct payment procedure" allowing the customer claim of the Fugate Estate in the amount of $63,963.12. *Id.* ¶ 9. SIPC paid the Fugate Estate's claim in the aforementioned amount and received a release and an assignment of any claims that the claimant might have against others. *Id.* ¶ 10. *See also* 15 U.S.C. § 78fff–3 ("To the extent moneys are advanced by SIPC . . . to pay or otherwise satisfy the claims of customers . . . ., SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in this chapter[.]"). Murphy did not participate in SIPC's determination regarding the Fugate Estate's claim. Answer ¶ 14.

At about the same time, SIPC denied the customer claims of: (i) Best and her son; (ii) Murphy; (iii) his sister; (iv) their mother; and (v) Murphy's employee benefit plans. Motion ¶ 11, Ex. D; ¶ 14, Ex. J. In accordance with 15 U.S.C. § 78fff–4(e), Best commenced a civil action in this Court challenging SIPC's denial of her and her son's claim (the "Best Claim"). *Id.*

¶ 11, Ex. D. On October 13, 1999, this Court issued an Order/Memorandum granting "in substantial part" SIPC's motion for summary judgment as to the Best Claim. *Id.* ¶ 12, Ex. D. *See also Best v. Selheimer*, 1999 WL 890930 (Bankr. E.D.Pa.1999). Shortly thereafter, the Best Claim was settled. Motion ¶ 13, Ex. E. SIPC paid $25,000 in full satisfaction of the claim and received a release and an assignment of any claims that the claimant might have against others. *Id.* Murphy did not participate in SIPC's determination regarding the Best Claim. Answer ¶ 14.

Similarly, on October 3, 2000, Murphy, his sister, their mother and Murphy's employee benefit plans commenced a proceeding (the "First Proceeding") in this Court challenging SIPC's denial of their customer claims in the direct payment procedure. *Id.* ¶ 14, Ex. J. Following an evidentiary hearing, this Court issued an Opinion ("April 4th Opinion") and Order dated April 4, 2002 ("April 4th Order"), reversing SIPC's determination that Murphy's sister and his mother were ineligible customers under the statute but upholding the SIPC's denial of the customer claims belonging to Murphy and his benefit plans. *Id.* ¶ 16. *See also* Exhibit J to Motion. With regard to Murphy, this Court ruled that because a Certificate of Limited Partnership was never filed on behalf of Debtor, Murphy must be treated as a general rather than a limited partner of the firm. *Id.* at 18–19. Under 15 U.S.C. § 78fff–3, customers who are general partners of a debtor are ineligible for payment of their customer claims. *See* 15 U.S.C. § 78fff–3(a)(4). On June 13, 2002, this Court subsequently issued an Opinion (the "June 13th Opinion") and Order denying a motion for reconsideration. Motion ¶ 18. *See also* Exhibit S to Motion at 5. In its June 13th Opinion, this Court observed that Murphy's arrangement with the Debtor "insulated him from participation in the

firm's profits and losses." *See* Exhibit K to Motion at 5. Murphy thereafter appealed to the District Court. Motion ¶ 18.

On June 19, 2002, SIPC commenced a liquidation proceeding in the District Court concerning the Debtor under 15 U.S.C. §§ 78fff–4(f), 78eee(a)(3). *Id.* ¶ 19. *See also* Exhibit S to Motion at 5. The District Court appointed SIPC as trustee and transferred the proceeding to this Court. *Id.*

In mid-August of 2002, Selheimer, as Debtor's general managing partner, verified Debtor's Schedule of Assets which show that the estate has no assets except for the possible claims against Debtor's general partners. Motion ¶ 22, Ex. N. Selheimer also testified at the meeting of creditors which was conducted in the liquidation proceeding that Debtor has no assets except for the possible claims against its general partners. *Id.* ¶ 23, Ex. O.

In September of 2002, SIPC advanced $162,195.00 to Murphy's sister in accordance with its revised determination of her claim. *Id.* ¶ 24, Ex. P. In exchange, SIPC received a release and an assignment (to the extent of such payment) of all rights that she might have against any other person or entity arising out of or relating to her account with the Debtor. *Id.*

Thereafter, the District Court affirmed this Court's April 4th Order upholding SIPC's denial of claims but found it unnecessary to address this Court's ruling that Murphy was a general partner of the Debtor. *Id.* ¶ 26, Ex. R. *See also Murphy v. Selheimer & Co. (In re Murphy)*, 2003 WL 21993955 (E.D.Pa.). On April 6, 2004, the Court of Appeals issued its Opinion and Judgment affirming the District Court. *Id.* ¶ 27, Ex. S. The Court of Appeals specifically affirmed this Court's ruling that, as to third parties and creditors, Debtor should be considered a general partner of Debtor since no certificate of

limited partnership was ever filed for Debtor with the State. *Id.* at 11–12.

On June 21, 2004, SIPC issued its redetermination of Jeanne Murphy's claim, allowing that claim "in the sum of $840,667 consisting of a claim for cash in the amount of $594,713 and a claim for securities in the amount of $245,954." Motion ¶ 25, Ex. Q; ¶ 29, Ex. T. Currently, there are no funds constituting property of the Debtor's estate; SIPC has advanced all funds distributed to date for the payment of customer claims and administrative expenses. *Id.* ¶ 30, Ex. U.

SIPC commenced the instant adversary proceeding (the "Second Proceeding") on June 6, 2004 by filing a complaint (the "Complaint"). In the Complaint, SIPC alleges that: (i) Debtor is properly treated as a Pennsylvania general partnership and Murphy as a general partner of the Debtor; (ii) there is a deficiency of property of the estate to pay in full certain claims which have been or may be allowed in the proceeding for the liquidation of the Debtor; and (iii) Murphy is liable for such deficiency under § 723 of the Code and applicable Pennsylvania law. Complaint ¶¶ 4–7.

After Murphy filed an answer to the Complaint, SIPC filed its Motion to which Murphy filed his Answer. A hearing on the Motion was held on October 19, 2004. Approximately four days later, Murphy filed a memorandum of law raising a legal argument involving § 8331 of the Pennsylvania Uniform Partnership Act (UPA). *See* Memorandum of Law in Opposition to Motion of Securities Investor Protection Corporation as Trustee for a Partial Summary Judgment and Other Relief ("Murphy's Additional Memorandum").

*The Parties' Positions*

SIPC maintains that the record establishes Murphy's liability as a partner of a

bankrupt partnership. Over the course of his Answer, Memorandum and Supplemental Memorandum, Murphy offers four reasons why summary judgment is not appropriate:

1. The record does not show that Murphy was a general partner of Selheimer & Co.

2. The record does not support any finding of liability which may be imputed to Murphy as a partner of Selheimer & Co.

3. Murphy's lack of any right to the profits of Selheimer & Co. effectively caps his liability to SIPC at zero.

4. The record does not show that Murphy was a party to the determinations of the Best and Fugate Estate claims; therefore, those claims should not be included in any deficiency charged to him.

*The Operative Bankruptcy Code Provision*

In filing suit against Murphy, SIPC proceeds under section 723 of the Code:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.

11 U.S.C. § 723(a). The statute's predicate for partner liability is that a deficiency exists. *See In re Massetti,* 95 B.R. 360, 365 (Bankr.E.D.Pa.1989) (citing legislative history of § 723 which states that to the extent that there is a partnership deficiency, each general partner is liable to the partnership trustee for that shortfall)

*Does the Record Demonstrate a Deficiency?*

To date, SIPC has advanced over $251,000 to pay customer claims and another $215,000 for administrative claims.[3] On top of that, it has determined the customer claim of Jeanne Murphy at approximately $841,000.[4] Motion, Ex. T. But SIPC has no more than $5000 in cash. Motion, Ex. U. Mr. Selheimer confirmed that the partnership has no assets save the claims against the general partners. Motion, ¶¶ 22,23. The record shows then that the partnership estate will be deficient. Consequently, SIPC has turned to Murphy *qua* partner to recover the payments already made as well as those anticipated.

*Issue Preclusion and the Finding that Murphy is a General Partner*

Murphy argues first that there is no proof *in this proceeding* that he was a general partner of the Selheimer & Co. Answer, 2. SIPC contends that the doctrine of issue preclusion operates to prevent Murphy from arguing that the issue remains triable. Transcript 10/19/04 (T-)5.

Issue preclusion, known traditionally as collateral estoppel, "prevents the relitigation of issues that have been decided in a previous action." *Hawksbill Sea Turtle v. Federal Emergency Management Agency,* 126 F.3d 461, 474 (3d Cir.1997). *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party

---

**3.** The Securities Investor Protection Act (SIPA) provides for advances for customer claims. *See* 15 U.S.C. § 78fff–3.

**4.** Ms. Murphy has since challenged that determination. Motion, ¶ 29.

to the prior litigation."). "Issue preclusion is based upon the policy that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 547 (3d Cir.1996) (*quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)). As the Third Circuit explained "[t]he doctrine of issue preclusion reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves judicial resources, and 'encourage[s] reliance on adjudication.'" *Dici,* 91 F.3d at 547 (*quoting Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)).

■ The general rule is that issue preclusion applies if the following four factors are met: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) there was a valid and final judgment; and (4) the determination was essential to the prior judgment. *National Railroad Passenger Corp. v. Pennsylvania Pub. Util. Comm'n,* 288 F.3d 519, 525 (3d Cir.2002). Murphy does not appear to directly challenge any of the four elements of issue preclusion. This is not surprising as the Court finds all four element to exist here: The issue of whether Murphy was a partner is the same issue raised in the previous proceeding (Motion, Ex. J., Opinion, 17–19); that issue was thoroughly litigated by both parties (*id.*); there was a valid and final judgment entered (*id.*); and the finding that Murphy was a partner meant that his "customer" claim would be denied. *Id.* 18–19.

Murphy is vague as to why he may relitigate the partnership question. He talks of this proceeding being "separate and distinct" from the prior adversary action. Answer, 2. But that is precisely the context in which collateral estoppel is applied. He goes on to maintain that "he should now have the opportunity to litigate whether he was a partner since the issue in these proceedings is not whether he should be entitled to have his claim paid but whether or not he should be liable to SIPC with respect to claims which SIPC paid." Answer, 3.[5] But that, too, has nothing to do with collateral estoppel. Germane to both issues—customer status under SIPA and partnership deficiency liability under the Bankruptcy Code—is the finding of partner status. So it would not be until the hearing that Murphy would explain his position as being grounded in the equities. Murphy argues that Selheimer has already "victimized" him by embezzling his money. T–16. To require him to make up the very deficiency caused by Selheimer without allowing Murphy the opportunity to challenge the premise of that liability—his status as a partner—is, says Murphy, simply unfair. T–17, 18. And as the Third Circuit has explained, this general notion of fairness matters when a party asserts issue preclusion:

> This general rule [of collateral estoppel] is subject to a number of equitable exceptions designed to assure that the doctrine is applied in a manner that will serve the twin goals of fairness and efficient use of private and public litigation resources. The equitable factors to be considered in a particular case depend in part on (1) whether both parties to the subsequent suit were also parties to the first so that there is "mutuality of estoppel," *see Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 28 L.Ed.2d 788

---

**5.** At oral argument, Murphy couched his position in terms of general unfairness.

(1971) and (2) whether the estoppel is being asserted (a) "offensively" by a plaintiff seeking to estop a defendant from relitigating issues which the defendant has previously litigated and lost, or (b) "defensively" by a defendant seeking to estop a plaintiff from relitigating an issue which the plaintiff has previously litigated and lost, [citation omitted].

*National Railroad,* 288 F.3d at 525. In cases, such as this one, where offensive mutual collateral estoppel is raised, the trial judge should refrain from applying the doctrine if it would be unfair to the defendant. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979).

The relevant equitable factors to be considered in a case of mutual collateral estoppel are summarized in Section 28 of the Restatement of Judgments:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as the result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement (Second) of Judgments § 28 (1982). *See National Railroad,* 288 F.3d at 526 (applying § 28 of the Restatement); *see also* Restatement § 28, Comment g (explaining that the application of this section is for the "rare exception" to the doctrine of issue preclusion). The Court now turns its attention to determine whether any of the exceptions would apply.

Subsection (1) would not apply because review was available to Murphy. Subsection (2) is not applicable because the issue here is factual, and not legal. Subsection (3) is not operative because the procedures in both the prior and present proceedings are the same. Subsections 5(a) and (c) would not apply because, as to (a), neither the public interest nor that of a third party is implicated here, and as to (c), there is no indication that circumstances beyond Murphy's control compromised his case. That leaves subsections (4) and (5)(b). To de-

termine if either apply, further analysis is required.

*Absent Preclusion, Would SIPC's Burden of Proof Differ in this Proceeding?*

Under subsection (4), an issue adjudicated in a prior proceeding will not be given later preclusive effect if that would relieve the party asserting estoppel from having to meet a higher standard of proof. *See O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 593–94 (3d Cir.1989). Is that the risk posed here?

In the prior proceeding, SIPC did not have to prove that Murphy was a partner of Selheimer & Co. until Murphy had met his threshold burden of proving that he was a "customer" as defined by SIPA. *See In re John Dawson & Assoc., Inc.*, 271 B.R. 561, 565 (Bankr.N.D.Ill.2001) ("A customer seeking a SIPA advance, like a creditor asserting a priority claim bears the burden of proof with respect to their status as a customer.). Murphy was able to meet this burden because the parties stipulated that all of the investments claimed by Murphy were on the books and records of Selheimer & Co. *See* Motion, Ex. J., Opinion, 3; *see also* 15 U.S.C. § 78fff–2(b) (providing that customer's claim must be "ascertainable from the books and records of the debtor" or "otherwise established to the satisfaction of the trustee"). That shifted to SIPC the burden of proving that Murphy was, notwithstanding, disqualified from customer status. SIPC would do this by demonstrating that Murphy was a general partner of Selheimer & Co.[6] Motion, Ex. J., Opinion, 17–18. And the standard of proof applied by the Court was the standard applicable to conventional civil litigation: the preponderance of the evidence. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 253, 109 S.Ct. 1775, 1792, 104 L.Ed.2d 268 (1989)

(noting that ordinary civil litigation is determined by the preponderance of the evidence standard); *see also Sudimak v. Pillus*, 881 F.Supp. 152, 158 (E.D.Pa.1995) (noting the same).

In this proceeding, SIPC is required to prove very same thing, except that this time SIPC is the plaintiff. To impute deficiency liability to Murphy, SIPC must prove that he was a partner. And the same standard of evidence, i.e., preponderance, applies. So considering that the same proof would be applied to the same standard, there would be no unfairness in applying the preclusionary doctrine. If the outcome would be the same, then requiring SIPC to try the same issue would be an academic exercise. That leads the Court to conclude that the considerations of subsection (4) are not relevant here.

*Foreseeability of SIPC's Subsequent Use of the Finding That Murphy Was a Partner*

This final exception to the rule of collateral estoppel inquires whether it was not foreseeable that same issue would arise in later litigation. *See* Restatement (Second) of Judgments § 28(5)(b). Helpful to an understanding of this exception is the following comment:

> *i. Unforeseeability that issue would arise in the context of the second action.* As noted in § 27, Comment J., it is not necessary to the application of the rule of preclusion that the issue be one of "ultimate fact" in either the first or the second action. But at the same time, preclusion should not operate to foreclose redetermination of an issue *if it was unforeseeable when the first action was litigated that the issue would arise in the context of the second action,* and *if that lack of foreseeability may have contributed to the losing party's failure*

---

**6.** The two statuses are, in this context, mutu- ally exclusive. *See* 15 U.S.C. § 78fff–3(a)(4).

*to litigate the issue fully.* Such instances are rare, but they may arise, for example, between institutional litigants as a result of a change in the governing law. Thus, a determination in an action between the taxing authorities and a corporate taxpayer that a transfer of property has not occurred may become relevant to a wholly different question of liability under an amendment to the tax law passed after the initial judgment was rendered. Another example of a case in which a determination may have unforeseeable consequences is one in which that determination is relevant to a claim involving property acquired after the first judgment has become final.

Restatement (Second) Judgment § 28, Comment i (emphasis added).

As to whether subsequent use of the partnership finding should have been foreseen by Murphy, the Court points out that "[a]dversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case." *Cohen v. Bucci,* 905 F.2d 1111, 1112 (7th Cir.1990). The two adversary proceedings in this case are components of the larger liquidation which the Bankruptcy Code governs. However, that does not necessarily indicate that Murphy should have anticipated that if he were found to be a partner, then SIPC would sue him for a partnership deficiency. At that point in the insolvency, SIPC had not yet converted the case from a direct payment to a liquidation proceeding.

But even assuming Murphy could not reasonably have anticipated a second suit, the Court does not believe that this affected how he litigated the partner question. The Court can say with certainty that both parties litigated this issue to the fullest degree. And Murphy never states that had he known that the Trustee would later sue him then he would have put on his case differently. He merely asks the Court to look again at the same evidence: the issuance of Schedule K–1's and whether the other partners filed them with their tax returns. But as to the K–1's, the Court found probative Mr. Selheimer's testimony that they were issued to all partners including Murphy. And this was corroborated by the witness Groethe. Add to that the partnership's failure to file a Certificate of Limited Partnership, and the Court was persuaded that Selheimer & Co. was a general partnership under Pennsylvania law and that Murphy was one of its partners. So even if Murphy did not foresee that an adverse result on the partnership question would arise in later litigation, the outcome would have been the same. In short, the record supports SIPC's claim that the earlier finding that he was a partner should be given preclusive effect in this proceeding.

*Does the Record Demonstrate Any Liability for Partner Misdeeds?*

█ In a partnership bankruptcy, each general partner is liable only to the extent that such general partner was personally liable for the underlying claims against the partnership. 6 *Collier on Bankruptcy* ¶ 723.02[1][b] (Matthew Bender 15th Ed. Revised). The determination of whether a general partner is personally liable has been held to be a matter of state law. *In re CS Associates,* 160 B.R. 899, 907 (Bankr.E.D.Pa.1993); 6 *Collier* ¶ 723.02[2]. And in Pennsylvania a partner is jointly and severally liable for certain torts chargeable to the partnership:

All partners are liable . . .

(1) *Jointly and severally* for everything chargeable to the partnership under sections 8325 (relating to wrongful act of partner) and 8326 (relating to breach of trust by partner).

15 Pa.C.S. § 8327(1)

But Murphy contends that joint and several liability cannot be imposed on him

under that provision because the evidence does not reflect that the wrongful acts committed by Selheimer are chargeable to the partnership. In that regard, sections 8325 and 8326 of the UPA provide:

§ 8325. Wrongful act of partner

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

§ 8326 Breach of trust by partner

The partnership is bound to make good the loss:

(1) Where one partner, acting within the scope of his apparent authority, receives money or property of a third person and misapplies it.

(2) Where the partnership, in the course of its business, receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

15 Pa.C.S. §§ 8325, 8326. Do either of these sections apply to render Selheimer & Co.—and thereby Murphy *qua* partner— liable for the criminal conduct of Perry Selheimer?

*Were the Wrongs Committed in the Ordinary Course of Selheimer & Co.'s Business?*

 Murphy maintains that he is not vicariously liable for Selheimer's acts because the record does not show that such conduct was within the ordinary course of business of the partnership as required by UPA § 8325. *See* Answer, 3. The term "ordinary course of business" equates to the scope of the firm's purpose. *Baxter v.*

*Wunder,* 89 Pa.Super. 585, 1926 WL 4468 *2 (1926) ("Each member of a partnership is personally liable for a tort committed by a copartner acting in the scope of the firm business.... The test of the liability is based on a determination of the question whether the wrong was committed in behalf of and within the reasonable scope of the business of the partnership."); *Tupper v. Haymond & Lundy,* 2001 WL 936650 *9 (E.D.Pa.)(quoting same); *see also Treon v. W.A. Shipman & Son,* 119 A. 74, 275 Pa. 246, 249 (1922) (holding that if one partner commits a tort in respect to a matter foreign to the firm's business, the other partner is not liable, unless he authorized or adopted the wrongful act). And fraud committed within the apparent furtherance of the firm's business renders all partners liable. *See First Nat.Bank of Altoona v. Turchetta,* 181 A.2d 285, 287, 407 Pa. 511, 512 (1962) (holding a partnership liable for conversion embezzlement, fraud and deceit, misapplication of money or other wrongful conduct of partner or other agent if committed in actual or apparent scope of business).

The record demonstrates that Selheimer & Co. perpetrated its fraud under the guise of operating a brokerage firm. The partnership was a registered securities broker-dealer that accepted money from clients for investment purposes. Motion, ¶¶ 2,3. Instead, Selheimer embezzled those funds. *See* Motion, Ex. G., ¶ 7. Selheimer's criminal acts were performed within the normal operation of this partnership's business. Put another way, at the time Selheimer was defrauding clients, it was acting in the ordinary course of the partnership's business. The partnership is therefore liable for those acts of Mr. Selheimer. And if the partnership is liable for those debts, then individual partners, including Murphy, are jointly and severally liable as well.

*Does the Record Demonstrate A Breach of Trust?*

▮▮▮ Alternatively, Murphy argues that there is no evidence of partnership liability under section 8326 because there is nothing to indicate that Selheimer was acting within the scope of his apparent authority when defrauding customers. In this Commonwealth, the doctrine of apparent authority has been incorporated into the principles of agency law. *See Bolus v. United Penn Bank,* 363 Pa.Super. 247, 260, 525 A.2d 1215, 1221 (1987). Apparent authority has been defined as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to third persons." Restatement (Second) of Agency § 8 (1958). The general rule governing the creation of apparent authority is:

> Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Restatement (Second) of Agency § 27 (1958); *Hartley v. United Mine Workers of America,* 381 Pa. 430, 113 A.2d 239, 246 (1955). Apparent authority exists when a principal, by words or conduct, leads people with whom the alleged agent deals to believe the principal has granted the agent authority he or she purports to exercise. *Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.,* 414 Pa.Super. 130, 135, 606 A.2d 532, 534 (1992). Apparent authority may result when a principal permits an agent to occupy a position which, "according to the ordinary experience and habits of mankind, it is usual for that occupant to have authority of a particular kind." *East Girard Sav. & Loan Ass'n v. Houlihan,* 373 Pa. 578, 580, 97 A.2d 23, 24 (1953). The nature and extent of an agent's apparent authority is a question of fact for the fact-finder. *Joyner v. Harleysville Insur. Co.,* 393 Pa.Super. 386, 393, 574 A.2d 664, 668 (1990).

Murphy misinterprets agency law when he argues that Selheimer lacked authority, express or apparent, to defraud clients. His argument operates from the erroneous premise that the record must show that Selheimer & Co., as principal, gave Perry Selheimer, as agent, license to steal. If that were so, then the doctrine of apparent authority would be eviscerated. What matters is whether Selheimer & Co. was authorized to accept client funds for investment. And the record shows that it certainly was: Selheimer & Co. was a broker-dealer registered with the SEC. *See* Motion, Ex. J. Mr. Selheimer formally admitted—pleaded guilty, in fact—to having committed "an abuse of trust" as to his clients. *Id.* Ex. F, G, and I. Client confidence would not have been placed in him unless he held himself out as an honest broker-dealer of financial investments; otherwise, clients simply would have taken their business elsewhere. There is thus sufficient proof to support a finding that Selheimer was acting within his apparent authority when defrauding clients. That, in turn, supports a finding of liability as to the partnership which may by assessed against Murphy.

*Does Section 8331 of the UPA Effectively Cap Murphy's Liability at Zero?*

▮▮▮ Murphy contends that he cannot be held liable, as a matter or law, for debts chargeable to Selheimer & Co. because he did not share in the profits of the

partnership. He relies in that regard on section 8331 of the UPA which provides, in pertinent part:

> The rights and duties of the partners in relation to the partnership shall be determined . . . by the following rules:
>
> . (1) *Each partner* shall be repaid his contributions, whether by way of capital or advances to the partnership property, and share equally in the profits . . . and *must contribute toward the losses*, whether of capital or otherwise, *sustained by the partnership, according to his share in the profits.*

15 Pa.C.S. § 8331(1) (emphasis added). Murphy concludes that because he did not share in the profits, he bears no liability to the creditors of Selheimer & Co. The flaw in this argument is correctly identified by SIPC. Murphy has misapplied the provision applicable to partner relations inter se (§ 8331 of Subchapter D—"Relations of Partners to One Another") with the liability provisions of partners to third parties (Subchapter C—"Relation of Partners to Person Dealing with the Partnership."). Murphy effectively attempts to limit the liability of a general partner to third persons through a contractual provision. Pennsylvania law will not allow this. *See Siegel Bros v. Wood,* 1894 WL 3509 *4 (1894). And, as SIPC points out, Murphy is not the first partner to make this argument. In *In re CS Associates,* 160 B.R. 899 (Bankr.E.D.Pa.1993), a general partner of a limited partnership sought to cap his liability to third parties at the 25% percent share of the profits and losses provided for him under the limited partnership agreement. The Bankruptcy Court would reject that argument pointing out that the UPA provision regulating the sharing of profits and losses of the limited partnership applied only to relations of the partners amongst themselves; it had no applicability to liability to third parties. *Id.* at 908–909. The same conclusion was reached in *In re Labrum & Doak, LLP,* 237 B.R. 275, 296 (Bankr.E.D.Pa.1999). Nothing in Murphy's relationship with Selheimer & Co. limits his liability to SIPC.

### *Assuming Murphy is Liable, Must he Reimburse SIPC For The Best and Fugate Estate Claims?*

■ Once SIPC advances funds to pay a customer claim, it becomes subrogated to the claim of that customer. *See* 15 U.S.C. § 78fff–3(a); *Appleton v. First National Bank of Ohio,* 62 F.3d 791, 800 (6th Cir. 1995). Murphy does not dispute this but takes issue with having to pay toward the claims of the Fugate Estate and the Bests. *See* Answer, 4. He explains that because he was not a party to the adjudication of those two claims,[7] any summary judgment for a liquidated deficiency should not include the amount of those claims. T–18,-19. Implicit in this position is a claim of prejudice. Is Murphy entitled to challenge the amount of the Best and Fugate Estate claims at this time or are those determinations entitled to preclusive effect?

SIPC maintains that, as a matter of law, Murphy may not seek redetermination of the Best and Fugate Estate claims. Motion, 8; T–6,7. It relies on the following provision from SIPA:

> (f) Discontinuance of direct payment procedures
>
> If, at any time after the institution of a direct payment procedure with respect to a member, SIPC determines, in its discretion, that continuation of such di-

---

**7.** The Fugate Estate was allowed and paid directly by SIPC in the direct payment proceeding. Motion, Ex. B. The Best claim was first denied by SIPC, litigated in this Court, and then settled. Motion, Ex. D.

rect payment procedure is not appropriate, SIPC may cease such direct payment procedure and, upon so doing, may seek a protective decree pursuant to section 78eee of this title. *To the extent payments of cash, distributions of securities, or determinations with respect to the validity of a customer's claim are made under this section, such payments, distributions, and determinations shall be recognized and given full effect in the event of any subsequent liquidation proceeding ...*

15 U.S.C. § 78fff–4(f). Murphy's response to this is that assessing the amount of those two claims against him without opportunity to be heard is simply unfair. T–19.

■ The Court has not come upon case law applying the highlighted language. However, the Court is mindful that "[t]he first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Valansi v. Ashcroft,* 278 F.3d 203, 209 (3d Cir.2002) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997)). If the statutory meaning is clear, the Court's inquiry is at an end. *Id; see also Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.,* 171 F.3d 818, 822 (3d Cir.1999) ("In the absence of a specific statutory definition, the language of the statute should be given its ordinary meaning and construed in a common sense manner to accomplish the legislative purpose.") In this case, the language of the provision is quite clear. It expresses an intent to give preclusive effect to claim determinations made in direct payment proceedings. *See* Sheila Cheston, *Investor Protection Under The SIPA: A Reassessment and Recommendations for Future Change,* 19 Colum. J.L. & Soc. Probs. 69, 85 (1985) ("Claims that are

wholly or partially satisfied or deemed as valid under the [direct payment proceeding] are recognized as such in the ensuing liquidation proceeding."). The advances to Best and the Fugate Estate were made by SIPC during the direct payment proceeding; they are entitled to full effect in the subsequent liquidation. Murphy, accordingly, is precluded from challenging the amount of those claims.

*The Customer Claim of Jeanne Murphy*

■ SIPC also asks the Court to enter summary judgment as to the *unliquidated* claim of Jeanne Murphy. Is that appropriate at this juncture?

Most cases considering the question have allowed the trustee to proceed under § 723 of the Code in advance of a precise determination of the amount of the deficiency. 6 *Collier on Bankruptcy* ¶ 723.03[2][b]. A leading commentator explains why this is permitted:

> Section 723(a) gives the trustee a claim against general partners of the partnership "if there is a deficiency of property of the estate to pay in full all claims which are allowed" in the partnership's chapter 7 case. While the language implies that the deficiency must first be determined before the trustee can maintain an action under section 723(a), doing so is not feasible for the trustee. It may take years for the trustee to liquidate all assets of the estate, determine the amount of all claims, and arrive at a precise amount for the deficiency. It would be impractical for the trustee to wait until the trustee has completed administration of the partnership's assets before seeking contributions from the general partners.

6 *Collier on Bankruptcy* ¶ 723.02[3]. The usual threshold is that the trustee is able to prove with a reasonable degree of certainty that a deficiency will exist. *Id.* at ¶ 723.02[3][b][i]; *Marshack v. Mesa Valley*

*Farms, L.P. (In re The Ridge II)*, 158 B.R. 1016, 1022 (Bankr.C.D.Cal.1993) (summary judgment can be granted to trustee on issue of liability, with exact amount of recovery to be determined at later date); *MBank Corpus Christi v. Seikel (In re I–37 Gulf L.P.)*, 48 B.R. 647, 649 (Bankr. S.D.Tex.1985) (noting in dicta that trustee must first determine with reasonable certainty that a deficiency exists); *Jahn v. Lamb (In re Lamb)*, 36 B.R. 184, 189 (Bankr.E.D.Tenn.1983) (granting judgment in favor of trustee against general partner even though precise amount of deficiency not yet determined). *But see Mills v. Grotewohl (In re Super 8 Florida III, Ltd.)*, 211 B.R. 764, 765 (Bankr. M.D.Fla.1996) (trustee's motion for summary judgment denied because trustee had not demonstrated that there would be a deficiency).

In this case, SIPC has already advanced approximately $561,000 to customer and administrative claimants. Jeanne Murphy's customer claim will likely exceed that amount. With only $5000 in cash on hand, the Selheimer & Co. estate is certainly deficient. So even though there exist claims yet to be liquidated, the insolvency of this estate allows the Court to enter a deficiency judgment against Murphy. The amount of that judgment will be in the amount of the customer claims already advanced plus the allowed amount of the Jeanne Murphy customer claim.[8]

*SIPC's Request for A Financial Statement from Murphy*

 SIPC's last request is that this Court direct Murphy to provide a financial statement as provided under Bankruptcy Rule 1007(g):

**Partnership and partners**

The general partners of a debtor partnership shall prepare and file the schedules of the assets and liabilities, schedule of current income and expenditures, schedule of executory contracts and unexpired leases, and statement of financial affairs of the partnership. *The court may order any general partner to file a statement of personal assets and liabilities within such time as the court may fix.*

B.R. 1007(g) (emphasis added). This provision recognizes that general partners are personally liable for the debts of the partnership and their assets may be reached by a chapter 7 trustee of the partnership in order to satisfy claims against the partnership. 9 *Collier on Bankruptcy,* ¶ 1007.07. Rule 1007(g) leaves to the Bankruptcy Court's discretion whether such a financial disclosure should be required of the general partner. *In re Narrows Realty Company*, 1994 WL 62177 *1 (Bankr.M.D.Pa.) citing *In Re 222 Liberty Associates*, 108 B.R. 971, 988 (Bankr. E.D.Pa.1990).[9] Given that there will be a deficiency, Murphy should be required to file a statement of assets and liabilities with the Court.

*Summary*

The Court finds that summary judgment is appropriate to enter in a liquidated

---

**8.** In its motion and at the hearing, SIPC explained that it did not seek to recover from Murphy the amount of the administrative claims. Motion, 12; T–2,8.

**9.** The reason that the rule is not mandatory is because § 723 does not apply to Chapter 11 cases. However, the general partners of a Chapter 11 Debtor are required to contribute to cover any deficiency in partnership assets if the partnership liquidates. *See* 9 Collier § 1007.07. Moreover, a financial statement of each partner may be necessary to enable the court to determine whether a chapter 11 plan is in the best interests of creditors, i.e., whether creditors will receive more under the plan than in a chapter 7 liquidation. *Id.*

amount for the $251,158.12 in claims advanced by SIPC and an additional $840,667 for the customer claim of Jeanne Murphy. This ruling is based on the finding that Selheimer & Co. is deficient; that Murphy was a partner of Selheimer & Co.; and that he is vicariously liable under Pennsylvania law for the acts of Perry Selheimer which are chargeable to Selheimer & Co. In short, all of the arguments offered by Murphy in opposition to the motion are rejected. Murphy shall be required to provide this Court and SIPC with a statement of his assets and liabilities.

An appropriate order follows.

### ORDER

AND NOW upon consideration of the Motion of the Securities Investor Protection Corporation (SIPC) as Trustee for Partial Summary Judgment and Other Relief, the Answer of Defendant Edward P. Murphy, III, the briefs filed by the parties, and after a hearing held won October 19, 2004, it is hereby

ORDERED that summary judgment is entered in favor of SIPC and against Defendant Murphy in the amount of $251,158.12 for customer claims advanced by SIPC and in the amount of an additional $840,667 for the customer claim of Jeanne Murphy which has not yet been paid; and it is

FURTHER ORDERED that within thirty (30) days of the date of entry of this Order, Murphy shall furnish SIPC with a written statement of his assets and liabilities as provided by B.R. 1007(g).